IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GABRIEL MORALES-MADERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv222-TMH |
| | ) | (WO) |
| J.A. KELLER, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This is a *pro se* petition for a writ of habeas corpus by a federal prisoner pursuant to

28 U.S.C. § 2241. Doc. No. 1.[1]  The petitioner, Gabriel Morales-Madera ("Morales-

Madera"), is currently incarcerated at the Federal Prison Camp in Montgomery, Alabama,

serving a 250-month sentence imposed in January 2002 by the United States District Court

for the District of Puerto Rico, upon his conviction for conspiracy to possess with intent to

distribute five kilograms or more of cocaine, one kilogram or more of heroin, and multi-

pound quantities of marijuana. When he filed the instant petition, on March 8, 2010,

Morales-Madera's projected release date was January 21, 2019, assuming that he received

all good-conduct time available. Doc. No. 11-3 at 2. Morales-Madera contends that the

---

[1]Unless otherwise indicated, references to document numbers are to those assigned by the
Clerk to pleadings docketed in the instant § 2241 action.  Page references in the pleadings for this
action are to those assigned by CM/ECF.

Federal Bureau of Prisons ("BOP") has improperly denied him prior-custody credit on his federal sentence for 42 months he spent incarcerated in the Dominican Republic for violations of that country's drug-trafficking laws.

The pleadings and other records before this court indicate that in May 1997, Morales-Madera was arrested by law enforcement officials of the Dominican Republic on charges of drug-trafficking in that country.[2] He was subsequently tried and convicted for those charges and, in March 1999, he was sentenced to a term of three years in a Dominican prison. Doc. No. 11-10 at 4. He remained incarcerated under that sentence until November 2000, when his conviction was reversed on appeal and the charges against him were dismissed.[3]

On November 29, 2000, Dominican authorities released Morales-Madera to the custody of U.S. authorities,[4] who transported him to San Juan, Puerto Rico, where he faced pending drug-trafficking charges in the United States District Court for the District of Puerto Rico based on an indictment handed down in December 1997. Doc. No. 11-10 at 7; Doc.

---

[2]Morales-Madera is a United States citizen and was listed as a U.S. fugitive at the time of his May 1997 arrest by Dominican authorities. Doc. No. 11-10 at 6.

[3]Under Dominican law, Morales-Madera was required to remain in prison after expiration of his three-year sentence based on his failure to pay a fine that was imposed as part of his sentence. Doc. No. 11-10 at 9. Failure to pay such a fine could potentially extend a sentence in the Dominican Republic by up to two years. *Id*. It appears that the basis for the reversal of Morales-Madera's Dominican conviction was a finding of "insufficient evidence" by the appellate court.

[4]Dominican authorities delayed initiating deportation proceedings against Morales-Mardera while he was serving his sentence (Doc. No. 11-10 at 4); those proceedings were completed when Morales-Mardera's conviction was reversed, just before he was released to the custody of U.S. authorities.

No. 2-8.  Following a trial in August 2001, Morales-Madera was convicted of conspiracy to possess with intent to distribute cocaine, heroin, and marijuana, in violation of 21 U.S.C. § 846. On January 15, 2002, he was sentenced to the 250-month term of imprisonment he is currently serving.  Doc. No. 11-4 at 2.

In seeking prior-custody credit, Morales-Madera claims that his 42 months of incarceration in the Dominican Republic – from May 1997 to November 2000 – were directly related to the case that is the basis of his current federal sentence and that, in fact, his incarceration by Dominican authorities was at the behest of U.S. officials, who later tried him for drug-trafficking in Puerto Rico.  He argues that  he is therefore entitled to credit for time he served in Dominican custody, specifically, from May 2, 1997, through November 29, 2000.

## II.   DISCUSSION

The United States Attorney General, acting through the BOP, is responsible for computing the amount of credit due for the time served by a defendant prior to sentencing. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *see* 18 U.S.C. § 3621.  Program Statement 5880.28 "transmits the 'Sentence Computation Manual' which establishes the policies and procedures for the computation of sentences imposed for violations of the United States Code."  Program Statement 5880.28, ¶ 1. This Program Statement provides that 18 U.S.C. § 3585(b), which deals with "credit for prior custody," is controlling for making credit determinations for sentences imposed under the Sentencing Reform Act. *See*

Program Statement 5880.28, pp. 1-14.

Title 18 U.S.C. § 3585(b) provides:

Credit for Prior Custody.– A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585.

Simply put, for purposes of § 3581(b), Morales-Madera's incarceration in the Dominican Republic was not for the "same offense" for which his current federal sentence was imposed.[5]  The BOP ordinarily is not required to give credit toward a federal sentence for time spent by a prisoner serving a sentence imposed by another jurisdiction for an unrelated offense.  *See Shaw v. Smith*, 680 F.2d 1104, 1106 (5th Cir. 1982).  However, time spent in a state or foreign jail or prison, even if for an unrelated offense, should be credited toward time served on a federal sentence "if the continued state [or foreign] confinement

---

[5]Morales-Madera's time spent incarcerated in Dominican facilities was in the service of and was credited to his Dominican sentence and therefore precluded from credit toward his federal sentence.  *See* § 3585(b)(2).  In enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time."  *Wilson*, 503 U.S. at 337; see also, e.g., *United States v. Dennis*, 926 F.2d 768, 770 (8th Cir. 1991) ("A defendant is entitled to credit for time spent in official detention only if it has not been credited against another sentence.").

4

was exclusively the product of such action by federal law-enforcement officials as to justify treating the state [or foreign] jail as the practical equivalent of a federal one." *Ballard v. Blackwell*, 449 F.2d 868, 869 (5th Cir. 1971); *see United States v. Harris*, 876 F.2d 1502, 1506-07 (11th Cir. 1989). The prisoner bears the burden of showing that this is the case. *Smith*, 680 F.2d at 1106.

Morales-Madera asserts that he should receive prior-custody credit on his federal sentence for the 42 months he spent incarcerated in the Dominican Republic because, he says, his incarceration by Dominican authorities was at the behest of U.S. officials who tried him on drug-trafficking charges upon his release from Dominican prison. He maintains that the entire period of his incarceration in the Dominican Republic – from his arrest by Dominican authorities in May 1997, through his conviction in a Dominican court in March 1999, through his release from Dominican prison upon the reversal of his conviction in November 2000 – is attributable to U.S. authorities, whom he says caused his initial arrest and thereafter instructed Dominican authorities to detain him for over three years.

Morales-Madera's claim in this regard consists of pure speculation. His suggestion that Dominican authorities had no interest in trying and punishing him for violations of that country's controlled-substance laws, and that his incarceration in that country was solely at the direction of U.S. officials, is based on a self-serving interpretation of events that finds no support in the evidence. Apart from his own unsubstantiated allegations, there is no evidence that Morales-Madera's incarceration in the Dominican Republic, initially or at any

point, was exclusively the product of actions by U.S. authorities. Instead, the evidence indicates that his incarceration was the result of actions by that sovereign's law enforcement officials and judicial authorities.

Because Morales-Madera wholly fails to meet his burden of showing that his incarceration by Dominican authorities was at the behest of U.S. officials, he is not entitled to the credit for time served that he claims.[6]

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2241 petition for habeas corpus relief be DENIED as Morales-Madera has not shown he is entitled to relief on the basis of the claims presented therein.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before February 21, 2012. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed

---

[6]This court is unable to determine from the record the exact date in November 2000 on which Morales-Madera was released from his Dominican sentence  after reversal of his conviction, or the difference between the date of his release from his sentence and November 29, 2000, the date on which he was turned over to the custody of U.S. authorities. The record suggests that deportation proceedings were initiated upon Morales-Madera's release from his sentence and that he may have remained in Dominican custody pending those deportation proceedings. The record further suggests that it was upon the Dominican prosecutor's advice that the deportation proceedings were delayed. Doc. No. 11-10 at 4. On this record, Morales-Madera has not demonstrated that even the short period of time between his release from his Dominican sentence and his relinquishment to U.S. custody to face charges in Puerto Rico was exclusively the product of actions by U.S. authorities.

findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Boyington Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 7th day of February, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE